Joseph McLAUGHLIN, Petitioner–
Appellant,

v.

Michael CORSINI, Respondent–
Appellee.

Nos. 07–2798, 08–1020.

United States Court of Appeals,
First Circuit.

Heard May 7, 2009.

Decided Aug. 13, 2009.

Stephen B. Hrones, with whom Michael Tumposky was on brief, for Joseph McLaughlin, appellant.

Susan Reardon, Assistant Attorney General, with whom Martha Coakley, Attorney General, was on brief, for Michael Corsini, appellee.

Before BOUDIN, HANSEN,* and LIPEZ, Circuit Judges.

HANSEN, Circuit Judge.

Joseph McLaughlin sought federal habeas corpus relief, *see* 28 U.S.C. § 2254, after being convicted in 1998 of state-law crimes of armed assault with intent to murder and conspiracy to commit armed assault with intent to murder, arising out of a murder-for-hire scheme to kill his wife. McLaughlin appeals the order and judgment denying his habeas petition, alleging that the state court unreasonably applied federal law in affirming his convictions because the Commonwealth withheld certain exculpatory and impeachment evidence. We affirm.

I.

We presume the state court findings of fact to be correct, unless the petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Lynch v. Ficco,* 438 F.3d 35, 38 (1st Cir.), *cert. denied,* 549 U.S. 892, 127 S.Ct. 198, 166 L.Ed.2d 161 (2006). The facts of this case are set forth in the opinion of the

---

* Of the Eighth Circuit, sitting by designation.

Massachusetts Supreme Judicial Court, *see Commonwealth v. McLaughlin,* 431 Mass. 241, 726 N.E.2d 959 (2000), and summarized here.

McLaughlin and his wife, Marianne Lewis, were married in 1977. From 1985 through 1989, McLaughlin was involved in an affair with another woman. In 1989, McLaughlin gave Marianne a birthday present that included tickets for a musical theater production at Boston's Wang Theater, an activity they had often enjoyed together during the earlier years of their marriage. On the night of the performance, April 21, 1989, Marianne wore a white mink coat as McLaughlin had requested, even though it was out of season. Before the show, they parked their car on the fifth floor of the parking garage at the 57 Park Plaza Hotel, and Marianne walked ahead to summon the elevator. As she did, she was struck by a car and suffered near fatal injuries. The car that struck her was later discovered abandoned on the second floor of the parking ramp. It was registered to Stephen Mogan, who had called to report his car stolen while the police were at the garage investigating this incident. Mogan told police that he had been with friends all evening.

During Marianne's lengthy hospital stay and rehabilitation, McLaughlin's visits were infrequent, brief, and detached. Once when she wondered aloud why she had lived through the accident, McLaughlin commented, " 'I don't know why you lived, why don't you tell me.' " *McLaughlin,* 726 N.E.2d at 963. In 1986, McLaughlin had taken out a $150,000 life insurance policy on Marianne's life. The policy was allowed to lapse in April 1990.

Eventually, Stephen Mogan's former girlfriend exposed a conspiracy. Mogan testified at trial that sometime before April 21, 1989, he met with Brian McNeil and his father, William McNeil, both longtime acquaintances of Mogan. At the meeting, William McNeil asked to use Mogan's car to "ram[ ] down Marianne Lewis" at the "57 Park Plaza garage." *Id.* (internal marks omitted). The McNeils arranged to pay Stephen Mogan approximately $2,000 for his part in the conspiracy. Mogan spoke to the McNeils again on April 21. They instructed him to leave his car behind his apartment building with the keys in the ashtray, go out with friends for the evening, and later report that the car had been stolen. William McNeil said Butchie Falcione, who had been a neighbor of McLaughlin at one time, would help him with the killing. Stephen Mogan further testified that he did as instructed. The next day, William told Mogan that he, William, had driven down the ramp, hit the victim, and left the garage in another car driven by Butchie, who had been waiting for him in the garage. The Commonwealth promised Stephen Mogan probation in exchange for his truthful testimony.

James Short testified that while he was working as a paid informant for the Drug Enforcement Administration (DEA) in 1988, William McNeil had said "he had a contract of a husband on a wife." *Id.* Short was wearing an electronic recording device at the time and recorded the conversation. A DEA agent listened to the recording and prepared a written report of the incident.

McLaughlin's defense was that Marianne had been the victim of a hit-and-run driver, that William Mogan (Stephen's brother) had been driving Stephen Mogan's car at the time, and that William Mogan had fled after the accident.[1] The

---

1. The facts related to McLaughlin's defense are summarized in the trial court's order on McLaughlin's motion for new trial.

defense based this theory largely on the description given by a security officer, Al Tamburino, who reported that a man and woman had advised him of the incident shortly after it occurred. Tamburino described the man as a white male, between the ages of 19 and 23, 6 feet tall, 175 pounds, blond hair, blue eyes, and rotting teeth. He said the female appeared to be pregnant. A police sketch of the man based on this description was introduced into evidence. The Commonwealth called William Mogan as a witness to counter this anticipated defense by showing the jury his physical appearance to compare with the police composite sketch. William Mogan had dark brown hair, blue eyes, and healthy teeth. The prosecutor questioned him solely about his physical appearance. On cross-examination by the defense, William conceded that his girlfriend was pregnant in April 1989, that he would lie to protect his brother Stephen, that he had disagreements with his brother Stephen over the use of Stephen's car on one or two occasions, and that he had in fact been to the 57 Park Plaza Hotel theater to see a movie, a fact defense counsel pointed out that he had denied in his grand jury testimony.

The jury convicted McLaughlin of state-law crimes of armed assault with intent to murder and conspiracy to commit armed assault with intent to murder,[2] and the trial court sentenced him to 18 to 20 years of imprisonment. The Supreme Judicial Court of Massachusetts affirmed McLaughlin's convictions on direct appeal, holding that the evidence of the conspiracy was sufficient, that the coconspirator statement of William McNeil about the contract was admissible and not too remote, and

that the jury instructions were not erroneous. *Id.* 963–67.

McLaughlin then filed a motion for a new trial and three motions for reconsideration arguing, in relevant part, that he was prejudiced by the Commonwealth's failure to timely disclose an agreement not to prosecute William Mogan (Stephen's brother), who testified for the Commonwealth. The trial court denied the motions, finding that the evidence about William Mogan's agreement with the prosecutor was not exculpatory within the meaning of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that William Mogan was not a key government witness, and that the prosecutor's nondisclosure of the agreement not to prosecute was not intentional.

The Appeals Court of Massachusetts affirmed the trial court's denial of these motions. *Commonwealth v. McLaughlin,* No. 03–P–267, 2004 WL 2924875 (Mass. App.Ct. Dec.17, 2004) (unpublished). The court characterized William Mogan's direct examination testimony as nonsubstantive and rejected as too attenuated McLaughlin's argument that raising doubt about the veracity of William Mogan's testimony that he was not the driver would, in turn, cast doubt on Stephen Mogan's testimony that William McNeil was the driver. The appeals court concluded that McLaughlin was not prejudiced by the untimely disclosure of the agreement not to prosecute William Mogan. McLaughlin also argued on appeal that the Commonwealth had withheld impeachment evidence by not disclosing that DEA informant Short was a paid informant and had previously lied, an issue that the trial court's ruling did not discuss. The appeals court concluded, "even apart from the waiver issue, we

---

**2.** The state court dismissed as time barred a third conviction for conspiracy to commit murder.

discern no abuse of discretion" because the argument lacked merit. *Id.* at *2. The Supreme Judicial Court of Massachusetts denied further review. *See Commonwealth v. McLaughlin*, 443 Mass. 1105, 823 N.E.2d 782 (2005) (Table).

McLaughlin then filed a federal habeas corpus petition, raising three grounds for relief: (1) that he was denied due process when the prosecutor failed to disclose that William Mogan testified pursuant to an immunity agreement; (2) that he did not receive a fair trial because the prosecutor withheld evidence that informant Short was a paid informant, had lied in a previous case, and was in the witness protection program; and (3) that the Commonwealth failed to establish beyond a reasonable doubt by evidence independent of hearsay that he (McLaughlin) was involved in the conspiracy to kill his wife. The district court, adopting in full the unobjected to report and recommendation[3] of the magistrate judge,[4] concluded on the first ground that the state court's determinations—that the failure to disclose William Mogan's immunity agreement was not prejudicial and that the attenuated argument about the undisclosed evidence casting doubt on the testimony of Stephen Mogan was unpersuasive—were not contrary to or an unreasonable application of clearly established Supreme Court precedent. On the second ground, the district court concluded that McLaughlin failed to identify a consti-

tutional issue or a question of federal law regarding his claim that the prosecutor withheld "exculpatory" information about informant Short. Finally, the district court concluded that McLaughlin had waived the issue of whether the hearsay evidence of a conspiracy was sufficient by not addressing it in his Memorandum to the court. McLaughlin filed a timely notice of appeal, and the district court granted a certificate of appealability only on the first two grounds. *See* 28 U.S.C. § 2253(c); Fed. R.App. P. 22(b)(1).

## II.

■ McLaughlin argues that the prosecutor's failure to disclose the agreement with William Mogan was prejudicial and that certain impeachment evidence withheld about informant Short was exculpatory. We apply de novo review to the district court's denial of his habeas petition. *Healy v. Spencer*, 453 F.3d 21, 25 (1st Cir.2006), *cert. denied*, 549 U.S. 1268, 127 S.Ct. 1489, 167 L.Ed.2d 234 (2007). Under the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when the state court has addressed and resolved the merits of a constitutional issue, our review is limited to determining whether the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or

---

**3.** We usually enforce the waiver rule that "only those issues fairly raised by the objections to the magistrate's report are subject to review in the district court and [that] those not preserved by such objection are precluded on appeal." *Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988) (citing 28 U.S.C. § 636(b)(1)(C), for the proposition that the district court shall review the determination of those issues "to which objection is made"). However, this waiver rule is not jurisdictional, and the Commonwealth did not raise it on appeal. According-

ly, "we proceed to affirm on the merits of the district court's denial of habeas relief." *Castillo v. Matesanz*, 348 F.3d 1, 4 n. 1 (1st Cir.2003) (reaching the merits of a habeas petition despite the fact that the petitioner made only limited objections to the magistrate judge's report), *cert. denied*, 543 U.S. 822, 125 S.Ct. 30, 160 L.Ed.2d 32 (2004).

**4.** The Honorable Leo T. Sorokin, United States Magistrate Judge for the District of Massachusetts.

**20**

whether the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *see Healy* 453 F.3d at 25.

In his habeas petition, McLaughlin presented his claim that the prosecutor failed to disclose a nonprosecution agreement with William Mogan as a federal constitutional claim. The state trial court had resolved it as such, citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the state appeals court also addressed the issue, citing the more favorable (to appellant)state-court standard of *Commonwealth v. Healy*, 438 Mass. 672, 783 N.E.2d 428 (2003), as well as relying on the reasons articulated by the trial judge. Accordingly, the state courts resolved the merits of this constitutional issue, and we consider whether the state courts' analyses were an objectively unreasonable application of Supreme Court precedent. *Healy*, 453 F.3d at 25.

■■■ "Under *Brady*, the prosecutor has a duty to make available to the defense exculpatory evidence, including evidence useful for impeachment, possessed by the prosecution team or its agents." *Lopez v. Massachusetts*, 480 F.3d 591, 594 (1st Cir.), *cert. denied*, — U.S. —, 128 S.Ct. 171, 169 L.Ed.2d 116 (2007). The "evidence must have been suppressed by the State, either willfully or inadvertently." *Healy*, 453 F.3d at 25. Also, "a wrongful withholding of evidence is not a basis for *Brady* relief unless it was prejudicial, meaning (in this context) either a likelihood of a different result or circumstances that otherwise shake a court's confidence in the result of the trial." *Lopez*, 480 F.3d at 595; *see also Healy*, 453 F.3d at 25 (stating prejudice requires " 'a reasonable probability of a different result' had the evidence been disclosed") (quoting *Banks*

*v. Dretke*, 540 U.S. 668, 699, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004)).

■■■ The Appeals Court of Massachusetts concluded that the nondisclosure in this instance could not have influenced the jury because William Mogan, whom the trial court found was not a key prosecution witness, provided only nonsubstantive testimony and an opportunity for the jury to view his physical appearance on direct examination. It was reasonable to conclude that there was little to be impeached about William Mogan's physical appearance from the knowledge of an agreement not to prosecute him. Additionally, the state appeals court concluded that McLaughlin's argument that William Mogan's agreement with the prosecutor could have been useful impeachment evidence against his brother, Stephen Mogan, was too attenuated to have caused prejudice that would have shaken the court's confidence in the outcome. The fact that the appeals court did not cite the Supreme Court's *Brady* decision does not make its decision contrary to federal law where it is clear that the issue was raised as a constitutional claim (the motion judge cited *Brady* ) and the appeals court expressly relied on "the reasons stated by the motion judge," in addition to its own reasoning. Under AEDPA, there is no requirement that the state court cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam). Cited or not, the state courts properly applied the standards announced in *Brady*. We conclude that the state courts' resolution of this issue was not contrary to *Brady*, nor did it involve an unreasonable application of *Brady* or any other Supreme Court precedent.

In McLaughlin's second issue, he complains that, although informant Short testi-

fied that he was a paid DEA informant, McLaughlin was not informed of other details, such as how much Short was paid or that he had previously lied under oath. This issue was not expressly presented as a constitutional claim in his habeas petition, but he referenced the undisclosed information as exculpatory, useful as impeachment evidence, and necessary to a fair trial. His habeas petition referenced *Brady* when stating each issue that he had raised in his motion for new trial in state court, including this one. The state trial court did not address the issue, but the state appeals court, rather than relying on a waiver, held that McLaughlin had not established any duty to investigate or disclose the information he asserts was suppressed.

■ Assuming McLaughlin properly raised a *Brady* issue, the state appeals court's conclusion that he failed to establish that the Commonwealth had a duty to investigate or disclose the additional details was not objectively unreasonable or contrary to Supreme Court precedent. Under *Brady,* the allegedly exculpatory information must be possessed or controlled by the prosecution team or its agents in order to give rise to a duty to disclose. *See United States v. Hall,* 434 F.3d 42, 55 (1st Cir.2006) (stating, although a prosecutor must disclose information maintained by government agents even if not in the prosecutor's possession, "this duty does not extend to information possessed by government agents not working with the prosecution"). The state court's determination that McLaughlin did not present evidence giving rise to a duty of the Commonwealth to disclose the information was therefore not contrary to or an unreasonable application of the Supreme Court's precedent in *Brady.*

### III.

Accordingly, we affirm the judgment of the district court denying McLaughlin's habeas petition.

*Affirmed.*