UNITED STATES of America, Appellee,

v.

Edward J. SANTOS, Defendant, Appellant.

No. 97–1085.

United States Court of Appeals, First Circuit.

Heard Oct. 10, 1997.

Decided Dec. 8, 1997.

James T. McCormick, Providence, RI, for appellant.

Margaret E. Curran, Assistant United States Attorney, Providence, RI, with whom Sheldon Whitehouse, United States Attorney, and Edwin J. Gale, Assistant United States Attorney, were on brief for the United States.

Before TORRUELLA, Chief Judge, BOUDIN, Circuit Judge, and WOODLOCK,* District Judge.

BOUDIN, Circuit Judge.

On this appeal, Edward Santos seeks review of his conviction and sentence for threatening to kill President Clinton. At the time of the threat, Santos was an inmate at the Adult Correctional Institution ("the ACI") in Cranston, Rhode Island. Santos had a history of psychiatric disease, including a diagnosis of chronic paranoid schizophrenia. The pertinent events can be quickly summarized.

On August 17, 1994, the White House mail room received a letter containing a threat to assassinate President Clinton. The letter, which had been mailed from the ACI, read in relevant part: "[Y]ou have upset me to the point that I feel I should assassinate you which would enable me to go down in the history books and if the Secret Service gets in my way they will get it too." The letter was signed "Barry Shea" (who is the head of the ACI classification board). The Secret Service began an investigation.

After two inmates identified Santos as the sender, and in light of Santos's previous mailing of a threatening letter to President Reagan in 1986, Secret Service agents interrogated Santos at the prison on August 26, 1994, and January 12, 1995. At both interviews, Santos admitted his involvement with the letter. The letter had been written by another inmate, Raymond Francis; but Francis said, and Santos admitted, that Santos had given Francis a text to copy over and that Santos had mailed the letter. Apparently, Santos feared that his own handwriting would be recognized by the Secret Service due to the 1986 letter.

Santos was charged with making a threat against the President, in violation of 18 U.S.C. § 871. Santos underwent a psychiatric examination and was found competent to stand trial. The prosecution witnesses at trial included Francis and the Secret Service agent who conducted the interview with Santos. Santos offered an insanity defense; his

* Of the District of Massachusetts, sitting by desig-

expert testified that Santos suffered from a chronic mental disease that prevented him from appreciating the wrongfulness of his actions. The prosecution experts opined that Santos was lying about his symptoms.

The jury convicted Santos, and the district judge sentenced him to 57 months in prison. The judge ruled that threatening the President was a "crime of violence" under the career offender provisions of the Sentencing Guidelines, see U.S.S.G. §§ 4B1.1, 4B1.2(1)(i), and sentenced Santos within the resulting guideline range. The judge refused to depart downward based on mental condition. Santos has appealed, raising a series of issues.

■ 1. In the district court, Santos argued at a suppression hearing that his confessions were invalid because his will was overborne by the combination of his mental disease and the conduct of the Secret Service agents. Santos alleged that at the first interview, one of the agents yelled at him and called him a liar; and he argued that this conduct, in concert with his fragile mental state (of which the agent was aware), rendered his confession involuntary. The second interview, Santos asserted, was tainted by the first.

At the hearing the agent testified that the initial interview had been conducted in an interview room in midmorning and Santos was not in handcuffs; that Santos had been advised of his rights to counsel and to remain silent but had invoked neither; that the agent had yelled at Santos and had called him a liar when Santos had at first denied involvement; that Santos was nervous but appeared to have no difficulty in understanding questions and gave understandable answers; and that the interview from start to finish took no more than 90 minutes.

■ The district court found that Santos had voluntarily waived his rights to counsel and to remain silent and that his statements were voluntary rather than coerced. Findings of raw fact are reviewed for clear error. See United States v. Procopio, 88 F.3d 21, 27 (1st Cir.), cert. denied, — U.S. —, 117 S.Ct. 620, 136 L.Ed.2d 543 (1996) and —

nation.

U.S. ——, 117 S.Ct. 1008, 136 L.Ed.2d 886 (1997). We will assume, favorably to Santos, that the ultimate conclusion as to voluntariness is open to *de novo* review, with some possible allowance for the district court's superior vantage. *See Ornelas v. United States,* —— U.S. ——, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).

We find no reason to disagree with the district judge. Santos was not irrational or incapable of understanding his rights. While his mental history is certainly pertinent to the voluntariness of his statements, the precedents still require some degree of coercion or trickery by government agents to render a statement involuntary, *see Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986), and yelling once or twice does not reach this level. The scene may make some squeamish, but that is not the constitutional standard, and Santos's statements were properly admitted.

██ In a supplemental brief, Santos raises another issue related to the voluntariness of his statements. Citing 18 U.S.C. § 3501(a), Santos argues that the judge committed plain error when she failed to give an instruction telling the jury that it could choose to give less weight to his confessions because of the surrounding circumstances. The section reads, in pertinent part:

> If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and *shall* instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

*Id.* (emphasis added). Neither side requested this instruction.

Section 3501(a) obviously assumes that the defendant has sought to make an issue of voluntariness before the jury after being rebuffed by the trial judge. *See United States v. Fera,* 616 F.2d 590, 594 (1st Cir.), *cert. denied,* 446 U.S. 969, 100 S.Ct. 2951, 64 L.Ed.2d 830 (1980). It appears that Santos did follow this course in the present case, and he would certainly have been entitled to the instruction if he had sought it. We will assume, *arguendo,* that because of the "shall" language in the statute the district judge "erred" in failing to give the instruction even without being asked, without resolving the government's claim that the evidence here did not create a legitimate issue of voluntariness.

But under *United States v. Olano,* 507 U.S. 725, 734, 741, 113 S.Ct. 1770, 1777–78, 1781, 123 L.Ed.2d 508 (1993), an error that occurred without objection at trial—however flagrant—does not warrant reversal unless it likely affected the outcome. There are a few exceptions to this requirement for so-called structural errors so fundamental as to undermine the integrity of the trial process, *see id.* at 735, 113 S.Ct. at 1778 (citing *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991)), but the present "error" is not within miles of that very rare category. It would be hard, indeed, to conduct trials if trial errors could be ignored by counsel and then freely raised on appeal.

Here, it is not likely that the jury would have found the confessions involuntary or unworthy of belief if the instruction had been given. The trial judge found the confessions to be voluntary and we have agreed, so we can hardly assume that the jury would probably have decided otherwise. As for credibility, the surrounding circumstances might, as a common-sense matter, have affected the jury's judgment about the weight to be given to Santos's statements, but evidence of those circumstances was admitted in evidence.

██ 2. Santos disputes several of the evidentiary rulings at trial. First, he says that it was error to exclude the fact that in 1986 the then-U.S. Attorney did not prosecute Santos when Santos wrote a threatening letter to President Reagan; the U.S. Attorney had cited "obvious mental illness" as one reason for declining prosecution. Trial court judgments such as this one, weighing the extent of relevance and then balancing relevance against prejudice, are reviewed for abuse of discretion. *See United States v. Rivera–Gomez,* 67 F.3d 993, 997 (1st Cir. 1995).

Even assuming no hearsay objection, a U.S. Attorney is not an expert on mental

condition. Thus we doubt that much weight could be given to such a lay assessment, even if we ignored the fact that the assessment related to Santos's state in 1986 and the pertinent issue at trial related to his state in 1994. The potential for prejudice and confusion is also apparent. The decision to exclude the evidence was not an abuse of discretion, especially in a trial where there was extensive expert testimony directed to the crucial issue whether Santos was sane in 1994.

■ Second, Santos asserts that the judge should have admitted proffered evidence that, in 1989, other inmates had forged Santos's signature on a letter threatening President Bush. The government now says that the incident was irrelevant (at the time it argued that the incident was "remote"). We need not pursue the issue of relevance because we agree with the government's alternative argument, made both at trial and now, that the agent questioned about the incident had only hearsay knowledge of the earlier threat.

■ Third, Santos says that it was error to allow a psychologist to testify that he had found Santos fit to stand trial because, Santos claims, the jury could mistake fitness to stand trial for an opinion that Santos was sane for purposes of the insanity defense. The standards of competency and insanity are admittedly different, and by statute a finding by the court of competency to stand trial is not to "prejudice" an insanity defense or be "admissible" at trial. 18 U.S.C. § 4241(f).

Here, of course, the court's competency finding was not offered or otherwise used against Santos. At best, the argument is that the underlying policy of the statute—at least partly to avoid confusion—should equally bar the expert on insanity from referring to competency. We need not resolve the issue: there was no objection at trial to the comment at issue; and, as it was dwarfed by extensive testimony on the insanity issue by both sides, the *Olano* prejudice standard cannot be satisfied.

■ Fourth, the prosecution's psychiatric witness, responding to a question as to which facts helped him in evaluating Santos's mental condition, testified that Santos's efforts to "throw people off his trail" indicated that he "knew what he was doing was wrong." Santos argues that this testimony amounted to an "opinion ... as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto," in violation of Fed.R.Evid. 704(b).

Rule 704(b) has proved troublesome to administer and is not universally popular, because it complicates the provision of expert testimony and involves very difficult line drawing. *See* 2 S. Saltzburg & M. Martin, *Federal Rules of Evidence Manual* 101–02 (5th ed.1990); *see also United States v. Brown,* 32 F.3d 236, 238 (7th Cir.1994). Whether much is changed by stopping the expert's testimony just short of the ultimate issue is open to doubt. Still, Congress is entitled to an honest effort by judges to comply with its rule.

Here, however, the statement in dispute was not objected to at trial. The main force of the testimony lay in the ascription of conscious trickery to the defendant, not in the arguably forbidden explicit reference to knowledge of wrongdoing. *Olano*'s prejudice showing cannot be met. This is, therefore, not an occasion for seeking to fine-tune our interpretation of Rule 704(b), a daunting task under the best of circumstances.

■ 3. Santos claims that he was overmedicated during the trial and unable to assist in his defense. The district judge held a post-trial hearing on the claim, at which there was testimony from both sides. Despite testimony from a psychiatrist, Santos's father, and Santos's attorney to the effect that Santos was unresponsive, the judge credited the prosecution expert, who testified that Santos's description of symptoms was more consistent with an effort to deceive than with actual indicators of incompetence.

■ We uphold a district judge's determination of competency after a hearing unless clearly erroneous. *See United States v. Lebron,* 76 F.3d 29, 32 (1st Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 2537, 135 L.Ed.2d 1060 (1996). The judge heard testi-

mony from a competent expert that Santos was likely pretending and could, in any event, have assisted in his defense. There is no clear error in the judge's determination that Santos was competent to stand trial.

Santos also sought a new trial on the ground that the verdict was against the weight of the evidence. We have examined the evidence offered by both sides. It is enough to say that the government offered expert evidence of Santos's sanity which, although countered by a defense expert, remained substantial. The denial of the new trial motion was in no sense an abuse of discretion.

4. Finally, Santos attacks his sentence on two fronts. First, he argues that his act of sending a threatening letter to the President should not be considered a "crime of violence" for the purposes of U.S.S.G. § 4B1.1. This section increases offense level and criminal history category for "career offenders," where the present crime is one of violence or a controlled substance offense and where the defendant has had two or more prior convictions for such an offense.

Santos says that his present crime was not a "crime of violence." As a matter of bare language, one could easily argue that this quoted phrase does not embrace a mere criminal *threat* of violence. But unfortunately for Santos, U.S.S.G. § 4B1.2(1)(i) expressly defines the quoted phrase, for purposes of section 4B1.1, to include any offense punishable by more than a year in prison that has as an element "the ... threatened use of physical force against the person of another...."

The offense statute in this case, 18 U.S.C. § 871, makes it criminal to send any letter threatening "to take the life of, to kidnap, or to inflict bodily harm" on the President. The indictment expressly charged Santos with threatening the life of and bodily harm to the President. Thus, Santos's offense had as an element the threatened use of physical force against another person.

Santos is therefore probably mistaken in invoking *United States v. Leavitt*, 925 F.2d 516 (1st Cir.1991), where this court said that the defendant's own conduct should be examined where the statute embraces both violent and non-violent conduct. But even if we looked solely to Santos's conduct, a threat to assassinate does involve threatened force against another. It is of no help that he may not have intended to carry out his threat, and in the short run certainly could not in fact have done so. *See United States v. Poff*, 926 F.2d 588, 590 (7th Cir.), *cert. denied*, 502 U.S. 827, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991).

Santos's second challenge to his sentence is his contention that his mental condition merited a downward departure. His theory is that his severe mental illness was a mitigating circumstance not adequately accounted for in the guidelines, U.S.S.G. § 5K2.0, or reflected reduced mental capacity for which departure may be permitted under U.S.S.G. § 5K2.13. However, a refusal to depart is unreviewable unless the district court based it on an error of law. *See United States v. Clase-Espinal*, 115 F.3d 1054, 1056 n. 3 (1st Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 384, 139 L.Ed.2d 299 (1997).

There is no such error here. The district court did not refuse to depart because of a ruling of law that could be challenged on appeal as mistaken. Instead, it found that Santos's mental illness did not diminish his capacity to understand what he was doing nor did it contribute to the carrying out of the offense. We have no authority to review this determination. *See United States v. Tardiff*, 969 F.2d 1283, 1290 (1st Cir.1992).

*Affirmed.*