# United States Court of Appeals
## For the First Circuit

No. 06-1019

JULIE A. PIKE,

Petitioner, Appellant,

v.

BARBARA R. GUARINO,
SUPERINTENDENT, MCI-FRAMINGHAM,

Respondent, Appellee.

No. 06-1020

JULIE A. PIKE,

Petitioner, Appellee,

v.

BARBARA R. GUARINO,
SUPERINTENDENT, MCI-FRAMINGHAM,

Respondent, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Torruella, Circuit Judge,
Selya and Tashima,* Senior Circuit Judges.

Catherine J. Hinton, with whom James L. Sultan and Rankin & Sultan were on brief, for petitioner.

David Lieber, Assistant Attorney General, Commonwealth of Massachusetts, with whom Thomas F. Reilly, Attorney General, and Cathryn A. Neaves, Assistant Attorney General, were on brief, for respondent.

————————————

July 2, 2007

————————————

_____
*Of the Ninth Circuit, sitting by designation.

**SELYA**, **Senior Circuit Judge**. These are two appeals arising out of a federal habeas corpus petition brought by a state prisoner. In the principal appeal, the petitioner — who portrays herself as a victim of battered woman's syndrome — urges us to reverse the denial of habeas relief and hold that she lacked competency to stand trial in the state court or, alternatively, that she involuntarily waived her right to present a viable theory of defense. In the cross-appeal, the respondent (the superintendent of the state correctional facility in which the petitioner is confined) urges us to revisit the district court's determinations concerning exhaustion of state remedies and the granting of a federal evidentiary hearing, as well as to consider a nascent theory of procedural default. After working our way through a procedural quagmire, examining a mountain of paper, and studying a complex set of legal issues, we reject both appeals and affirm the judgment of the district court.

## I. BACKGROUND

This case has a lengthy and tortured history. The Supreme Judicial Court of Massachusetts (the SJC) has accurately recounted the evidence presented at the petitioner's trial and in the subsequent state court proceedings. See Commonwealth v. Pike, 726 N.E.2d 940, 942-51 (Mass. 2000) (Pike I). We assume the reader's familiarity with that opinion, rehearse here only those details that are directly relevant to our analysis, and amplify

-3-

that account to reflect evidence presented before the federal habeas court.

In 1995, a Massachusetts jury found the petitioner, Julie A. Pike, guilty of second-degree murder. This conviction resulted from the interaction of the petitioner and her swain, Barry Loring, with Don Maynard. As part and parcel of what began as a plan to steal a car, Maynard was slain in his Greenfield home. The murder occurred in 1994 and suspicion soon centered on Loring and the petitioner.

Loring agreed to plead guilty and became the Commonwealth's star witness at his former girlfriend's trial. He vouchsafed that the pair had broken into Maynard's abode together; that they then agreed that Loring would kill Maynard using a gun discovered inside the house; but that, when Maynard returned home earlier than anticipated, an altercation between the two men ensued. According to Loring, the petitioner ended the scuffle by killing Maynard with a shot to the back of the head.

In addition to Loring's eyewitness testimony, the Commonwealth presented substantial physical evidence linking the petitioner to Maynard's home; evidence that she had fled with Loring; proof that she had sold some of Maynard's property at a pawn shop; and testimony from Loring's cellmate that tended to corroborate Loring's account of the relevant events.

The petitioner testified in her own defense. She admitted to her entanglement in the overall events, but maintained that she had not been present in the Maynard residence at the time of the homicide. Instead — following Loring's instructions — she had waited at a nearby bridge. Thus, the petitioner argued that her participation was limited to helping Loring clean up after the murder and dispose of Maynard's lifeless body.

At the close of all the evidence, the jury rejected the petitioner's version and found her guilty of second-degree murder. The trial justice sentenced her to life imprisonment.

During the pendency of the petitioner's direct appeal, she moved for a new trial. See Mass. R. Crim. P. 30(b). The gravamen of her motion was that the severely abusive nature of her relationship with Loring had allowed him to control her both at the time of the murder and thereafter (up to and including the time of trial). She explained that Loring was able to exert dominion over her after their arrest because the two were detained at the same jail (albeit on different floors), which permitted extraordinary levels of contact between them. In addition, the petitioner had been seven months pregnant at the time of the murder, Loring was the father, and he had minimally supervised visits with their infant child during his pretrial incarceration. The petitioner claimed that Loring used these visits as leverage against her, threatening to harm the child if she did not do his bidding.

With this predicate in place, the petitioner maintained that she was under the spell of Loring's pervasive influence until after the trial. Through that circumstance, he had coerced her into giving a fabricated version of the events surrounding the Maynard homicide. She proceeded to recant portions of her trial testimony. The petitioner admitted that she had been in the house prior to Maynard's death but continued to assert that she had not committed the murder.

Taking matters a step further, the petitioner maintained that the combination of Loring's continued coercion and the cumulative psychological effects of the abuse (amounting to what is commonly known as battered woman's syndrome) rendered her incapable of disclosing the abuse to her attorneys at the time of trial.[1] In her view, both the revelation of the abuse and her changed testimony qualified as newly discovered evidence. See Commonwealth v. Grace, 491 N.E.2d 246, 248 (Mass. 1986). Furthermore, on her assessment of the case, this newly discovered evidence would have affected the outcome of the trial because it would have allowed her

---

[1]Battered woman's syndrome has been described as a "series of common characteristics that appear in women who are abused physically and psychologically over an extended period of time by the dominant male figure in their lives." State v. Kelly, 478 A.2d 364, 371 (N.J. 1984). One of these characteristics is a type of learned helplessness, through which the woman believes that the batterer has complete control of the relationship and that she cannot escape. See United States v. Brown, 891 F. Supp. 1501, 1505 (D. Kan. 1995). Women suffering from the syndrome often have a difficult time disclosing the abuse; "it is the nature of [the] illness to conceal its existence." Id. at 1510.

to explain that whatever actions she took on the day of Maynard's demise were taken under duress (i.e., coerced by Loring).

The original trial justice had retired, so a different judicial officer (whom, for ease in exposition, we shall refer to as the state court motions justice) held a four-day evidentiary hearing to supplement the affidavits and psychiatric reports submitted with the petitioner's motion. The hearing included testimony from the petitioner, the therapist who had begun to treat her, the lawyers who had represented her at trial, and Dr. Prudence Baxter (an expert on battered woman's syndrome). At the conclusion of the hearing, the state court motions justice denied the motion in a strongly-worded opinion. Commonwealth v. Pike, No. 94-091, slip op. at 2 (Mass. Super. Ct. Apr. 8, 1998) (unpublished). We offer a synopsis of the findings upon which that decision rested.

While assuming that evidence of battered woman's syndrome could in some cases support the granting of a new trial, the state court motions justice found the petitioner's version of events "implausible" and her testimony "unreliable," especially with respect to the degree of control that Loring exerted over her during their pretrial incarceration. Id. at 13. Specifically, the state court justice concluded that "[w]hile it [was] likely that [the petitioner] was subjected to some of the described acts [of abuse], at least up to the point of her incarceration, it [did] not

follow that [she] meekly surrendered to Loring's inescapable control at the time of her trial." Id.

The petitioner filed motions seeking reconsideration and leave to expand the record. See Mass. R. Crim. P. 13(a)(5). In connection therewith, she proffered affidavits from correctional officers employed at the jail where she and Loring had been detained prior to trial. The state court motions justice summarily denied these motions.

The SJC allowed the petitioner's application for direct appellate review. See Mass. R. Crim. P. 30(c)(8). It subsequently affirmed both the conviction and the denial of the petitioner's post-trial motions. See Pike I, 726 N.E.2d at 942. With respect to the new trial motion, the SJC confirmed that, under Massachusetts law, evidence of battered women's syndrome could constitute newly discovered evidence warranting a new trial. Id. at 948. Here, however, the petitioner's quest for a new trial was properly thwarted because the state court motions justice had made a supportable credibility determination — she simply did not believe that the petitioner suffered from the ravages of the syndrome during the period leading up to the trial. Id. at 949, 951. To cinch matters, the SJC held that the motions justice was not unreasonable in refusing to consider the additional affidavits. See id. at 951.

Having been rebuffed by the SJC, the petitioner repaired to the federal district court and filed a petition for a writ of habeas corpus. See 28 U.S.C. § 2254. Of her several asserted grounds for relief, only two are pertinent here: (i) that battered woman's syndrome had rendered her incompetent to stand trial in state court and (ii) that her inability to disclose Loring's abuse to her trial counsel constituted an involuntary waiver of her constitutional right to present a defense.

After some procedural skirmishing (to which we shortly shall return), the district court, without any detailed explanation, ordered an evidentiary hearing.[2] The hearing extended over eight days. The petitioner presented much of the same evidence that she had presented at the state court hearing on her new trial motion: her own testimony as to Loring's abuse, other testimony and affidavits corroborating the abuse, testimony from one of her lawyers, Dr. Baxter's testimony, and testimony from various therapists. The respondent (who, for ease of exposition, we shall call "the Commonwealth") produced several rebuttal witnesses, including Loring's trial attorney and its own psychiatric expert.

---

[2]During its four-year odyssey in the district court, the petitioner's case was assigned at different times to different judges. Rather than matching each ruling with each judge, we take an institutional view and refer only to the decisions of the district court.

At the conclusion of the hearing, the district court, ruling from the bench, denied the petition. These timely appeals followed. The district court has granted a certificate of appealability as to all issues. See id. § 2253(c).

## II. STANDARD OF REVIEW

In this case, appellate review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. The AEDPA permits federal courts to grant habeas relief after a final state adjudication of a federal constitutional claim only if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard applies, however, only to a "claim that was adjudicated on the merits in State court proceedings." Id. If the federal claim was never addressed by the state court, federal review is de novo. See Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) (noting that a federal court "can hardly defer to the state court on an issue that the state court did not address").

In this instance, it is undisputed that the SJC did not address either of the petitioner's current claims on the merits. To the extent, then, that these claims were properly before the

-10-

district court — more on this later — the district court correctly subjected them to de novo review. The court also correctly recognized that the AEDPA sets out a separate and exacting standard applicable to review of a state court's factual findings. See 28 U.S.C. § 2254(e)(1); Sanna v. DiPaolo, 265 F.3d 1, 10 (1st Cir. 2001).

As a general matter, the same standards that courts of appeals use in direct review of criminal convictions apply to appellate review of the decisions of federal district courts in state prisoner habeas cases. See 2 Steven Alan Childress & Martha S. Davis, Federal Standards of Review § 13.06, at 13-50 (3d ed. 1999). These include de novo review of legal issues and of most mixed questions of fact and law. See Scarpa v. DuBois, 38 F.3d 1, 9 (1st Cir. 1994). We say "most" because appellate review of mixed questions depends, in the last analysis, on the extent to which a particular question is fact-dominated or law-dominated.[3] See id.; see also In re Extradition of Howard, 996 F.2d 1320, 1328 (1st Cir. 1993).

---

[3]Some courts have indicated that an "independent review" standard should guide the evaluation of mixed questions of fact and law in habeas cases. See Scarpa, 38 F.3d at 9 n.5 (collecting cases); see also 2 Childress & Davis, supra § 13.06, at 13-50. We do not linger over this question because independent review involves roughly the same tamisage that we have outlined here; that is, significant deference to factbound determinations and little or no deference to law-based determinations. See United States v. Tortora, 922 F.2d 880, 882-83 (1st Cir. 1990); see also Scarpa, 38 F.3d at 9 n.5 (bypassing inquiry for similar reasons).

When the district court undertakes no independent factfinding in a habeas case, we are effectively in the same position as the district court vis-à-vis the state court record and have the ability to review that record from the same vantage point. Consequently, the district court's recension of that record will engender de novo review. See Breest v. Perrin, 624 F.2d 1112, 1115 (1st Cir. 1980); 2 Childress & Davis, supra § 13.06, at 13-50. When, however, the district court has held an evidentiary hearing and made new or different findings of fact, those findings are entitled to significant deference. See Scarpa, 38 F.3d at 9 n.5; see also McNair v. Campbell, 416 F.3d 1291, 1297 (11th Cir. 2005); McGregor v. Gibson, 248 F.3d 946, 951 (10th Cir. 2001).

## III.  THE HABEAS RECORD

As a prelude to our analysis of the petitioner's claims, we deem it prudent to say something about the factual record that underpins our review.  Although a magistrate judge recommended the opposite course of action, the district court granted a full-scale evidentiary hearing.  That hearing had no apparent limits.  It lasted nearly twice as long as the pertinent state court evidentiary hearing held seven years earlier, covered the same factual ground, and involved much of the same evidence.

Despite this similitude, the district court evaluated the evidence somewhat differently than had the state court motions justice.  It took a more flattering view of the petitioner's

-12-

credibility and made several factual findings that contradicted those of the state court motions justice. The district court justified these contrary findings on the ground that, in the course of the federal evidentiary hearing, its view of the underlying facts had been proven by clear and convincing evidence — a standard dictated by the AEDPA. See 28 U.S.C. § 2254(e)(1).[4]

The Commonwealth asseverates that the district court erred in granting a full-scale evidentiary hearing and beseeches us to disregard its factual findings. This is more than empty rhetoric: unless a state prisoner meets certain stringent requirements, the AEDPA prohibits a federal court from granting an evidentiary hearing when "the applicant has failed to develop the factual basis of a claim in State court proceedings." Id. § 2254(e)(2).

Seizing upon this prohibition, the Commonwealth argues that the petitioner, in the state courts, failed to develop the factual record needed to underbrace her habeas claims. In this vein, the Commonwealth notes that, at the state court evidentiary

---

[4]In the court below, the petitioner argued that the state court's factual findings were not entitled to a presumption of correctness because they were unreasonable in light of the evidence presented. She based this argument on the notion that AEDPA sections 2254(d)(2) and (e)(1) operate in tandem. To support that notion, she cited our opinion in Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001). The district court did not accept this hypothesis but, before us, the petitioner does not allege any harm resulting from the district court's refusal. Consequently, it is unnecessary for us to test this hypothesis.

hearing, the petitioner did not call the lawyers who represented her at trial[5] and elected to submit affidavits in lieu of much of the live testimony that she presented at the federal evidentiary hearing.

The petitioner rejoins on several fronts. First, she argues that she did not fail to develop the factual basis for her claims because the key facts — those pertaining to the abuse and her consequent inability to disclose that abuse to her trial counsel — were presented to the state court (albeit in lesser detail). Thus, a federal evidentiary hearing was not statutorily prohibited. Second, she emphasizes that, in interpreting section 2254(e)(2), the Supreme Court has equated the "failure to develop" language with "a lack of diligence, or some greater fault, attributable to the prisoner or prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 432 (2000). Such diligence embodies, "at a minimum, seek[ing] an evidentiary hearing in state court in the manner prescribed by state law." Id. at 437. Because she sought and received an evidentiary hearing in the state court, the petitioner maintains that she satisfied the diligence standard. Third, the petitioner asserts that the presentation of additional evidence in the federal court is unimpugnable because, under prevailing jurisprudence, she had the right to augment the record

_____

[5]The lawyers did testify during the state court hearing, but at the Commonwealth's instance.

-14-

on habeas review. See 1 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 20.2b, at 906 n.21 (5th ed. 2005). And, finally, the petitioner argues that the district court was required to grant her request for an evidentiary hearing under Townsend v. Sain, 372 U.S. 293, 312-13 (1963).

As a matter of statutory law, we reject the Commonwealth's importunings. Here, the petitioner adduced extensive evidence in the state court. The exact manner in which she elected to make the point is less important than the fact that she did make the point; her proffer went directly to the merits of the claims that she later sought to pursue in the federal court proceedings. We conclude, therefore, that the district court was not statutorily prohibited from taking evidence on those claims. See Bryan v. Mullin, 335 F.3d 1207, 1215 (10th Cir. 2003) (holding federal evidentiary hearing not statutorily barred when petitioner had sought to develop factual basis for claim in state court); Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir. 2001) (similar).

The fact that a federal evidentiary hearing was not statutorily barred does not mean that one was required. The decision to hold the hearing and the scale and scope of it are subject to review for abuse of discretion. See Crooker v. United States, 814 F.2d 75, 76 n.1 (1st Cir. 1987).

-15-

In this instance, we find the scale and scope of the hearing problematic. Federal habeas is a collateral proceeding; particularly after AEDPA, it is not intended to provide a forum in which to retry state cases. See Bell v. Cone, 535 U.S. 685, 693 (2002). Consequently, in state prisoner habeas cases in which the applicant was afforded a full and fair hearing in state court, federal evidentiary hearings ought to be the exception, not the rule. See Townsend, 372 U.S. at 314; see also 1 Hertz & Liebman, supra § 20.1, at 887 n.3 (noting that evidentiary hearings are allowed in less than 2% of all habeas filings). Even when such a hearing is thought desirable, restraint should be the watchword.

Here, the state court had conducted a full and fair evidentiary hearing. Moreover, the federal court's chosen course of action led to extensive duplication of effort. When a federal court opts to hold an evidentiary hearing in a state habeas case, the prototypical purpose should be to fill a gap in the record or to supplement the record on a specific point.[6] See, e.g., López v. Massachusetts, 480 F.3d 591, 597 (1st Cir. 2007) (approving grant of federal evidentiary hearing to supplement petitioner's Brady claim); Guidry v. Dretke, 397 F.3d 306, 324 (5th Cir. 2005) (approving grant of federal evidentiary hearing when "gaps,

---

[6]For example, such hearings are often useful when the federal habeas court is asked to consider a claim based on ineffective assistance of state court counsel. See, e.g., Bryan, 335 F.3d at 1215.

-16-

inconsistencies, and conflicting testimony were not explained, or even mentioned, in the [state] trial court's [opinion]"); Cooper v. Picard, 428 F.2d 1351, 1354 (1st Cir. 1970) (remanding for federal evidentiary hearing to develop facts anent claim of impermissibly suggestive identification procedures). Here, however, the district court forsook a circumscribed inquiry and, to all intents and purposes, fashioned a new and expanded record relative to the petitioner's state court motion for a new trial.

Where, as here, a federal district court sitting in habeas jurisdiction essentially replicates the entirety of the relevant state court evidentiary record, it is on very shaky ground. See Thatsaphone v. Weber, 137 F.3d 1041, 1046 (8th Cir. 1998) (suggesting that the district court "went beyond its habeas authority when it heard testimony rehashing what occurred at the [state court proceeding] and then reweighed the state court's fact findings"). Both Congress, in passing the AEDPA, and the Supreme Court, in construing it, have made pellucid that a federal habeas proceeding should not be used as an occasion for a retrial of the state court case. See H.R. Conf. Rep. No. 104-518, at 111 (1996) (explaining that the AEDPA was enacted to "curb the abuse of the statutory writ of habeas corpus" and that it "requires deference to the determinations of state courts that are neither 'contrary to,' nor an 'unreasonable application of,' clearly established federal law" (quoting 28 U.S.C. § 2254(d)(1))); see also Williams, 529 U.S.

-17-

at 386 (opinion of Stevens, J.) (discussing Congress's intent "to prevent 'retrials' on federal habeas").

Although we think that this point is worth making and that federal habeas courts should proceed with great circumspection in shaping the contours of evidentiary hearings, we need not decide in this case whether authorizing and conducting a full-scale evidentiary hearing constituted an abuse of discretion. The federal hearing was at the petitioner's instance and for her benefit. Yet (as we explain below), even taking this additional evidence and the district court's factual findings fully into account, the petitioner's claims cannot succeed. Any error in holding a full-scale evidentiary hearing was, therefore, harmless. See, e.g., Gonzales v. Quarterman, 458 F.3d 384, 394 (5th Cir. 2006); Greiner v. Wells, 417 F.3d 305, 318 n.15 (2d Cir. 2005). Accordingly, we bypass the question of whether the district court abused its discretion and consider its factual findings.

## IV. THE COMPETENCE CLAIM

The petitioner's flagship claim is that the district court erred in determining that she was competent to stand trial in the state court. The Commonwealth attempts to head off any substantive consideration of this claim through the interposition of nonexhaustion and procedural default defenses. Because we may affirm the district court's denial of habeas relief on any ground made manifest by the record, see, e.g., United States v. Cabrera-

-18-

Polo, 376 F.3d 29, 31 (1st Cir. 2004); InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003), we start with this initiative.

## A. Exhaustion and Procedural Default.

Principles of comity and federalism push in favor of giving state courts, without premature federal interference, a meaningful opportunity to consider, and if necessary to correct, claims of legal error in state criminal prosecutions. See Vasquez v. Hillery, 474 U.S. 254, 257 (1986). Consequently, federal courts are, in most instances, barred from granting habeas relief on a particular claim unless the petitioner has exhausted the remedies available to her in state court with respect to that claim. See 28 U.S.C. § 2254(b)(1)(A); see also Jackson v. Coalter, 337 F.3d 74, 85-86 (1st Cir. 2003). But exhaustion is a prudential principle rather than a jurisdictional limitation, so a state may waive the defense of nonexhaustion. See 28 U.S.C. § 2254(b)(3); see also Granberry v. Greer, 481 U.S. 129, 131 (1987); Strickland v. Washington, 466 U.S. 668, 684 (1984).

The district court expressed grave doubt that the petitioner's competence claim had been exhausted in the state courts. It determined, however, that the Commonwealth had waived this defense. The court based that determination on the sequence of events described below.

Shortly after the petitioner docketed her habeas petition, the Commonwealth moved to dismiss the competence claim

(among others) as unexhausted. The petitioner opposed the motion. In support of her opposition, she tendered various briefs that she had filed with the SJC. After mulling her response, the Commonwealth moved to withdraw its motion to dismiss. The withdrawal motion stated in pertinent part: "Having reviewed the[] materials, undersigned counsel believes that the petitioner is correct in her assertion that [the] claims presented in Grounds one through three of her petition have been exhausted." This concession encompassed the competence claim (ground one in the habeas petition).

It is hornbook law that waivers of exhaustion will not lightly be inferred but, rather, must be clear and explicit. See 28 U.S.C. § 2254(b)(3) (mandating that state must "expressly" waive exhaustion); Mercadel v. Cain, 179 F.3d 271, 276 (5th Cir. 1999) (finding implicit waiver of exhaustion "not determinative" because waiver must be express). The waiver here satisfies that rigorous standard; it was unmistakably clear.

Notwithstanding the clarity of the language that it employed, the Commonwealth now suggests that it did not really waive its nonexhaustion defense. It tries to justify this tergiversation by pointing out that the petitioner refined her competence claim at a later date (when she served a memorandum of law in support of her habeas petition). Had it been apprised of the exact dimensions of the competence claim that was embedded in

ground one of the petition, the Commonwealth protests, it never would have agreed that the claim was exhausted.

The district court rejected this suggestion. It ruled that the Commonwealth, which was on notice from the commencement of the habeas proceedings that the petitioner was raising a competence claim, had knowingly and voluntarily abandoned the exhaustion defense. We agree with this assessment.

The habeas petition states, as its first ground for relief, that the petitioner's conviction was "obtained at trial where petitioner was unable to meaningfully consult and communicate effectively with counsel." This language echoes a familiar formulation of the test for competence to stand trial. See Cooper v. Oklahoma, 517 U.S. 348, 368 (1996) (emphasizing that a critical component of competence is the ability to "communicate effectively with defense counsel"); Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam) (defining competence in part as the "present ability to consult with [a] lawyer with a reasonable degree of rational understanding"). It put the Commonwealth squarely on notice that the petitioner was asserting a competence claim — and the Commonwealth proceeded unreservedly to waive nonexhaustion as a defense to that claim.

That was game, set, and match. Waiver typically is thought to be the voluntary relinquishment of a known right. See United States v. Olano, 507 U.S. 725, 733 (1993). It is no secret

that waivers are strong medicine, not casually to be dispensed.  A party who chooses to waive a defense surrenders that defense as to the claim asserted and any claim fairly encompassed within it.  Cf. New York v. AMRO Realty Corp., 936 F.2d 1520, 1430 & n.10 (2d Cir. 1991) (holding that in waiving a late-notice defense, insurer waived that defense as to any claim arising out of the occurrence in question).  In other words, the waiver extends to the claim stated and any variants of the claim that are readily ascertainable from the language of the petition or complaint.  The waiving party cannot play the ostrich, burying its head in the sand and struthiously ignoring that which ought to be obvious.

The competence claim pursued by the petitioner was well within the compass of the language contained in ground one of the habeas petition.  The fact that the Commonwealth came to regret its waiver is not a sufficient reason to allow rescission of the waiver.  See, e.g., Dorsey v. Chapman, 262 F.3d 1181, 1187 (11th Cir. 2001) (declining to allow the state to resurrect exhaustion defense when it had expressly declined to raise the defense in the district court, even though the state claimed that its earlier declination was based on a mistaken belief); Bledsue v. Johnson, 188 F.3d 250, 254 (5th Cir. 1999) (finding that state had waived nonexhaustion defense by admitting in its original answer that the petitioner had exhausted state remedies).

Nor is the fact that the labeling of the claim changed over time sufficient to warrant rescission of the waiver; to the extent that the claim was vague or not specifically identified in haec verba as a competence claim, it was incumbent upon the waiving party to use caution in the exercise of the waiver. Cf. In re Cargill, Inc., 66 F.3d 1256, 1261 (1st Cir. 1995) (declining to allow retraction of waiver and noting that "litigants ordinarily are bound by their attorneys' tactical judgments"). Regardless of the absence of a label, the allegations pointed unerringly to the issue of competency. We conclude, therefore, that because the Commonwealth was on clear notice of the petitioner's assertion of the competence claim, its express and unqualified waiver of the nonexhaustion defense was effective as to the later iteration of that claim.

The Commonwealth's defense of procedural default, initially raised in this court, is too little and too late. A habeas claim is procedurally defaulted in either of two situations. First, a claim is procedurally defaulted if the state court has denied relief on that claim on independent and adequate state procedural grounds. See Lambrix v. Singletary, 520 U.S. 518, 522-23 (1997). Second, a claim is procedurally defaulted if it was not presented to the state courts and it is clear that those courts would have held the claim procedurally barred. See Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Perruquet v. Briley, 390

-23-

F.3d 505, 514 (7th Cir. 2004).  The habeas respondent (here, the Commonwealth) bears the burden "not only of asserting that a default occurred, but also of persuading the court that the factual and legal prerequisites of a default . . . are present."  2 Hertz & Liebman, supra § 26.2a, at 1265 n.5.

We assume that, as a matter of discretion, we may consider the Commonwealth's belated assertion of the defense of procedural default.  See Brewer v. Marshall, 119 F.3d 993, 999 (1st Cir. 1997) (noting that a federal court has discretionary authority to consider a belatedly raised procedural default defense or even to raise procedural default sua sponte).  Because no state court has ruled on the petitioner's competence claim, the Commonwealth's position necessarily hinges on the second branch of the procedural default defense.  It cannot satisfy that standard.

In this case, exhaustion and procedural default are not completely separate matters.  This imbrication is quite important; in expressly waiving the nonexhaustion defense, the Commonwealth lost the concomitant right, in the procedural default context, to assert that the claim was not presented to the state courts.  See Bledsue, 188 F.3d at 254 (concluding that the state had waived this form of procedural default defense when it admitted that the habeas petitioner had exhausted his state remedies).

Beyond the waiver, the Commonwealth has not shown that the competence claim, if presented today in the state courts, would

-24-

be procedurally barred. It off-handedly references a state procedural rule in support of its procedural default defense — but that rule cannot carry the weight that the Commonwealth places on it. The rule provides in part that grounds not raised in an original motion for a new trial are waived "unless the judge in the exercise of discretion permits them to be raised in a subsequent motion." Mass. R. Crim. P. 30(c)(2). Along this line, the SJC has indicated that, in "extraordinary cases," a motions justice may invoke Rule 30(c)(2) to consider new issues even after an appeal has been decided. Commonwealth v. Harrington, 399 N.E.2d 475, 478 (Mass. 1980).

The second branch of the procedural default defense depends on a high degree of confidence that the state court, if asked to adjudicate the claim, would declare it to be procedurally defaulted. See Cassett v. Stewart, 406 F.3d 614, 622-23 (9th Cir. 2005). This is as it should be: a federal court always must be chary about reaching a conclusion, based upon a speculative analysis of what a state court might do, that a particular claim is procedurally foreclosed. See, e.g., Banks v. Horn, 126 F.3d 206, 212-13 (3d Cir. 1997).

We apply those principles here. Given the divers possibilities that attend this situation, we are uncertain what procedural course the state trial court would take if asked to rule

-25-

on the competence claim.  That uncertainty dooms the procedural default defense.  Id. at 213.

Of course, our double-barreled conclusion that the Commonwealth waived its nonexhaustion defense and that it cannot mount a successful procedural default defense does not compel us to adjudicate the competence claim on the merits.  A federal court may choose, in its sound discretion, to reject a state's waiver of either nonexhaustion or procedural default.  See Granberry, 481 U.S. at 134-35; Earhart v. Johnson, 132 F.3d 1062, 1065 (5th Cir. 1998); cf. Oakes v. United States, 400 F.3d 92, 97 (1st Cir. 2005) (holding, in a federal prisoner's habeas case under 28 U.S.C. § 2255, that the district court may raise the question of procedural default even if that defense was waived by the government).  In exercising this discretion, concerns of comity, federalism, and judicial economy weigh heavily in the balance.  See Granberry, 481 U.S. at 134-35 (directing courts of appeals to determine, on a case-by-case basis, whether valid interests would be served by returning the case to state court).

Here, we see no reason to turn a blind eye to the Commonwealth's waiver.  Whatever the extent of the state court's opportunity to adjudicate the competence claim — a matter as to which the parties vehemently disagree — that court did evaluate the factual basis upon which the competence claim is premised.  With that in mind, it is difficult to imagine how the interests of

-26-

comity will be disserved by permitting a federal court, taking cognizance of those factual findings, to resolve the competence claim on its merits.

To cinch matters, the interests of judicial economy also will be served by putting the competence claim to rest here and now. The district court has held an extensive evidentiary hearing, and there is no way to unring the bell.

To say more on this issue would be to paint the lily.[7] For the reasons elucidated above, we hold the Commonwealth to its express waiver of exhaustion, reject its belated attempt to interpose a defense of procedural default, and proceed to evaluate the merits of the petitioner's competence claim.

## B. __The Merits__.

It is common ground that the Due Process Clause of the Fourteenth Amendment prohibits states from prosecuting those who are not competent to stand trial. See, e.g., Medina v. California, 505 U.S. 437, 439 (1992). The test for competence is uncontroversial; the accused, before and during the trial, must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and must possess "a

---

[7]It is worth noting that, in the end, we find the competence claim wanting. See infra Part IV(B). When a federal court grants habeas relief on an unexhausted claim, comity concerns are greater than when it denies relief on such a claim. See Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); see also 28 U.S.C. § 2254(b)(2) (authorizing a federal court to deny unexhausted habeas claims on the merits).

rational as well as factual understanding of the proceedings against him." Dusky, 362 U.S. at 402; see United States v. Pellerito, 878 F.2d 1535, 1544 (1st Cir. 1989).

The petitioner in this case makes a different kind of competency claim. She does not impugn her capacity to have understood the nature and import of the proceedings against her and to have communicated with her counsel on most subjects. She claims instead that the competence standard was infringed by her inability to communicate the facts touching upon her abuse to her lawyers. The state court motions justice questioned her overall credibility. The district court took a more empathetic view, finding that severe and pervasive abuse had occurred. But that court, too, rejected the petitioner's claim, concluding that she had retained the ability to communicate the abuse to her lawyers in the months leading up to the trial.

Taking the full sweep of the evidentiary record into account, see supra Part III, we focus on the district court's factual findings (rather than those of the state court). That focus, combined with the absence of a state court decision on the competence claim, alters the normal AEDPA standard of review and makes this case procedurally more like a direct criminal appeal. Thus, we will uphold the district court's determination of competence made after an evidentiary hearing unless that determination is clearly erroneous. See United States v. Santos,

-28-

131 F.3d 16, 20 (1st Cir. 1997). That standard is quite deferential; a finding of fact is clearly erroneous only when, upon a thorough assessment of the record, the reviewing court is left with an abiding conviction that a mistake has been made. United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); Ferrara v. United States, 456 F.3d 278, 287 (1st Cir. 2006). Given the independent factfinding that took place here and the intensely fact-based nature of competency inquiries, see Drope v. Missouri, 420 U.S. 162, 180 (1975), we see no reason to deviate from this deferential standard of review. See supra Part II.

Of course, an assertion of legal error still engenders de novo review. See United States v. Wiggin, 429 F.3d 31, 37 (1st Cir. 2005). Here, however, neither party suggests that the district court applied an incorrect legal standard in adjudicating the issue of competence. Consequently, we train the lens of our inquiry on two matters: the district court's factual findings and the question of whether those findings supported its ultimate conclusion.

At the end of the federal evidentiary hearing, the district court credited large portions of the petitioner's testimony and found that she had been subject to severe and pervasive abuse prior to her pretrial incarceration. The court also found that some emotional abuse had continued during her immurement. Notwithstanding these (favorable) findings, the court

-29-

concluded that the petitioner had been able, throughout the pretrial period and the trial itself, to communicate the abuse to her lawyers, but had made an affirmative decision not to broach that topic. In the court's view, the petitioner, "at the relevant times," was not "incapable of choice." Indeed, the petitioner had a "sufficient and then present ability to consult with her attorneys" with a reasonable degree of rational understanding. Therefore, she was competent to stand trial.

The district court's ultimate conclusion is amply supported by the record. The court picked its way carefully through a tangled evidentiary thicket. It took issue with some of the state court's findings, credited much of the petitioner's testimony, and gave credence to her expert's opinion that she had experienced battered woman's syndrome. At the same time, however, the court discounted significant portions of her testimony, including her claims of abuse suffered as a child, her claim that she had attempted to raise the issue of abuse with her attorneys at one point during the state court proceedings, and her various versions of the events that transpired on the day of the murder. In the end, the court found that the petitioner had not proved that an inability to communicate existed at the critical time.

The court was fully entitled to accept parts of the testimony of the petitioner and her experts yet reject the ultimate conclusion that they advocated. See Wiggin, 429 F.3d at 37;

Santos, 131 F.3d at 20-21; see also United States v. Alicea, 205 F.3d 480, 483 (1st Cir. 2000) (explaining that a factfinder "has the prerogative to credit some parts of a witness's testimony and disregard other potentially contradictory portions"). Certain features of this case reinforce that entitlement.

For one thing, the story that the petitioner told at trial in the state court did not jibe with Loring's account but, rather, incriminated him. It seems logical to infer that, had the petitioner been completely under Loring's spell at that time, her testimony would have been more in tune with his. Cf. State v. Kelly, 478 A.2d 364, 372 (N.J. 1984) (noting that victims of battered woman's syndrome have a tendency to accept responsibility for the batterer's actions).

For another thing, the logistics of the relationship between Loring and the petitioner were dramatically altered from and after their arrests. Both he and she were incarcerated for nearly a year prior to trial. They were housed on separate floors, and neither of them was free to move at will about the jail. The petitioner constructed an elaborate theory of how Loring was able to exert continued dominion over her during this interval and the district court seems to have bought into that theory. Even so, Loring's control over Pike plainly was palliated by their lack of physical proximity. See McMaugh v. State, 612 A.2d 725, 728, 730 (R.I. 1992) (deeming continuous contact relevant to the conclusion

that battered woman's syndrome rendered defendant unable to communicate her abuse). The district court's ultimate conclusion — that the petitioner, during this period, retained the ability to make a real choice about whether to disclose the details of their relationship to her counsel — seems to us a tacit recognition that Loring's control had abated.

Then, too, other straws in the wind pointed to the petitioner's competency to stand trial. For example, the district court heard testimony from one of the petitioner's trial attorneys. This seasoned criminal defense lawyer harbored no doubt about the petitioner's competence at the time of trial. He reported that the petitioner responded alertly and appropriately to questions, testified articulately, and took an active part in her own defense. This testimony was borne out by the transcript of the state court trial and by other evidence of the petitioner's active participation in her defense, including evidence that the petitioner had written letters to her attorneys during her incarceration.

The court also heard the testimony of Loring's defense counsel, who described the petitioner, in the relevant time frame, as "calm" and "collected." In addition, the Commonwealth adduced evidence that, as compared to Loring, the petitioner seemed "the stronger of the two individuals in th[e] situation that they were both in."

Although the petitioner offered explanations to counter many of these items, the district court was in no way bound either to accept those explanations or to ignore the Commonwealth's evidence. In the final analysis, it was wholly within the factfinder's province to resolve these contradictions and to choose among the conflicting inferences that the evidence suggested. See United States v. Gobbi, 471 F.3d 302, 311 (1st Cir. 2006); United States v. Ortiz, 966 F.2d 707, 713 (1st Cir. 1992).

In an attempt to salvage the competence claim, the petitioner cites several cases in which battered woman's syndrome has been the basis for questioning a defendant's competence. See, e.g., Commonwealth v. Conaghan, 740 N.E.2d 956, 960 (Mass. 2000); McMaugh, 612 A.2d at 732. This is something of a red herring; these cases stand for nothing more than the now-unremarkable proposition that battered woman's syndrome can in certain circumstances render a criminal defendant incompetent. The district court recognized this proposition (as do we) but found it inapplicable in this situation. As we have said, that fact-specific determination was not clearly erroneous.

That resolves this aspect of the matter. After hearing extensive testimony — perhaps more than it should have heard, see supra Part III — and carefully reviewing an amplitudinous record, the district court made a factual finding that the petitioner, at and before her trial, had the ability to consult and communicate

with her counsel and to assist in her defense.  That finding may be arguable, but we have no abiding conviction that it was wrong.  The finding is, therefore, entitled to deference.  See Ferrara, 456 F.3d at 287; Wiggin, 429 F.3d at 37.  It follows that the district court did not err in rejecting the competence claim.

## V.   THE INVOLUNTARY WAIVER CLAIM

We next address the petitioner's claim that the effects of the abuse, when combined with Loring's continued coercive control over her, forced her to forgo asserting battered woman's syndrome as a defense and, thus, violated her constitutional rights.  The petitioner constructs this portion of her argument in two layers.

The foundation is a line of Supreme Court cases that speak to an accused's constitutional right to present a defense. See, e.g., Rock v. Arkansas, 483 U.S. 44, 51 (1987); Crane v. Kentucky, 476 U.S. 683, 690 (1986); Chambers v. Mississippi, 410 U.S. 284, 302 (1973); Washington v. Texas, 388 U.S. 14, 18-19 (1967).  But these cases are not directly applicable; the petitioner's right to present the battered woman's syndrome defense, if infringed at all, was infringed by Loring, not by the Commonwealth.

In an effort to overcome this obstacle, the petitioner adds the next forensic layer.  That layer builds on cases which, in her view, indicate that, even in the absence of state action, the

right to present a defense may be abridged either by the conduct of a private party, <u>see</u>, <u>e.g.</u>, <u>Nichols</u> v. <u>Butler</u>, 953 F.2d 1550, 1552 (11th Cir. 1992) (en banc); <u>United States</u> v. <u>Teague</u>, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc); <u>United States</u> v. <u>Butts</u>, 630 F. Supp. 1145, 1147-49 (D. Me. 1986), or by an accused's own physical or mental condition, <u>see</u>, <u>e.g.</u>, <u>United States</u> v. <u>Ferrarini</u>, 219 F.3d 145, 151 (2d Cir. 2000).

The district court voiced understandable skepticism about whether involuntary waiver of a particular defense could constitute a separate habeas claim. This may explain why the court did not specifically rule on this claim in its <u>ore</u> <u>sponte</u> denial of the habeas petition. We need not belabor the point. The <u>availability</u> of the claim as a ground for habeas relief is a question of law — and one that the state courts did not directly address. Accordingly, our review is de novo. See <u>Fortini</u>, 257 F.3d at 47.

At first blush, this "involuntary waiver" claim may seem like nothing more than a recasting of the competence claim. But competence and voluntariness are separate (though complementary) inquiries. "The focus of a competency inquiry is the defendant's mental capacity" whereas the focus of a voluntariness inquiry is on "whether the defendant actually <u>does</u> understand the significance and consequences of a particular decision and whether the decision is uncoerced." <u>Godinez</u> v. <u>Moran</u>, 509 U.S. 389, 401 n.12 (1993).

Although the right to present a defense is of constitutional dimension,[8] it is not absolute. See, e.g., Nix v. Whiteside, 475 U.S. 157, 173 (1986) (recognizing that the right does not extend to committing perjury). Accordingly, the Supreme Court has tended to recognize the right in carefully defined contexts. See, e.g., Crane, 476 U.S. at 690 (finding a violation of the right when the state precluded the defendant's use of "competent, reliable evidence . . . central to the defendant's claim of innocence"); Washington, 388 U.S. at 18-19 (indicating that a denial of the right to compulsory process would be a denial of the right to present a defense).

None of this gets the petitioner very far. Unless the accused's right to present a defense is infringed by state action, the infringement is not redressable by a federal court charged with vindicating federal constitutional rights. As a general proposition, the Fourteenth Amendment protects individuals exclusively against government action, leaving the conduct of private parties to regulation by statutory and common law. See, e.g., Rendell-Baker v. Kohn, 457 U.S. 830, 837 (1982); Logiodice v. Trs. of Me. Cent. Inst., 296 F.3d 22, 26 (1st Cir. 2002).

---

[8]The petitioner seems uncertain whether the right that she asserts is rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Sixth Amendment as applied to the states through the Fourteenth Amendment. See Petitioner's Br. at 49. Because we find no violation of any cognizable constitutional right, we need not untangle this knot.

-36-

This is an unsurmountable barrier to the petitioner's involuntary waiver claim. In mounting that claim, she does not assign the Commonwealth any responsibility for thwarting her right to present a defense.[9] She alleges only that Loring, a private party, interfered with her exercise of that right through his abusive and coercive behavior. That infringement, even if it transpired, does not pave the way for federal habeas relief.

The several "private party" cases cited by the petitioner do not suggest a way around this barrier. Each of those cases involved coercion by the accused's attorney and turned on a finding of ineffective assistance of counsel. See Nichols, 953 F.2d at 1552; Teague, 953 F.2d at 1534; Butts, 630 F. Supp. at 1147-49. That is a recognized violation of the Sixth Amendment right to counsel and, thus, an independent basis for federal habeas relief. See, e.g., Strickland, 466 U.S. at 686; Ouber v.

_____

[9]Although the petitioner cites an occasional case indicating that trial courts have an affirmative duty to prevent the involuntary waiver of certain rights, see, e.g., Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938) (discussing waivers of right to counsel), she has not argued that the state trial court should have conducted some particularized inquiry in her case; nor does she identify what would have put the court on notice of the need to conduct such an inquiry. Where, as here, an appellant has merely hinted obliquely at an argument but has not advanced it distinctly, that argument is not in the case. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Guarino, 293 F.3d 19, 35-36 (1st Cir. 2002).  The petitioner in this case makes no comparable claim.

The petitioner's contention that a physical or mental condition, not attributable to state action, may work a violation of an accused's constitutional right to present a defense is wishful thinking.  The single case that she cites in support of that proposition is far off the point.  In that case, the defendant argued that the denial of his motion for either a severance or a continuance following a heart attack deprived him of his constitutional right to testify.  See Ferrarini, 219 F.3d at 151.  As such, the constitutional claim was focused not on the defendant's physical condition but, rather, on the district court's decision to forge ahead with the trial despite knowledge of the defendant's infirmity — a decision that plainly constituted state action.  See Shelley v. Kraemer, 334 U.S. 1, 14 (1948) (deeming "long [] established" the proposition that the actions of state courts and judicial officers in their official capacities constitute state action).

The short of the matter is that the petitioner invites us to find a constitutional violation (separate and distinct from ineffective assistance of counsel) in the infringement of an accused's right to present a defense by a private party alone, without any awareness (actual or imputed) of that infringement by

a state actor. We decline her invitation.[10] We emphasize that, in doing so, we do not hold that an infringement of this right by a private party may never result in a constitutional violation; this case does not require us to sweep so broadly. We do hold that the petitioner's involuntary waiver claim, as formulated here, is not cognizable as a separate and distinct ground for federal habeas relief.

## VI. CONCLUSION

We summarize succinctly. Because the Commonwealth waived its defense of nonexhaustion and failed to establish a defense of procedural default, we have considered the merits of the petitioner's claim that she was incompetent to stand trial in the state court. We find the district court's fact-bound rejection of that claim to be supportable.

The petitioner's remaining initiative — her claim of involuntary waiver — lacks legal footing and, thus, does not open a separate avenue for federal habeas relief. We need go no further.

---

[10]It bears mentioning that, even if we were to recognize this new type of constitutional violation, we would likely be barred from granting habeas relief on this claim under the familiar doctrine of Teague v. Lane, 489 U.S. 288, 310 (1989) (plurality opinion). For two reasons — because Pike has made a colorable claim that the Commonwealth waived the Teague issue below and because the merits of this claim are relatively clear-cut — we have elected to bypass an in-depth Teague analysis. See Campiti v. Matesanz, 333 F.3d 317, 321-22 (1st Cir. 2003).

**We reject both the petitioner's appeal (No. 06-1019) and the Commonwealth's cross-appeal (No. 06-1020). The judgment of the district court is affirmed. No costs**.